UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

REBECCA SCHIRRICK,

        Plaintiff,

v.

        Case Number 04-10367-BC
        Honorable David M. Lawson

AU SABLE VALLEY COMMUNITY
MENTAL HEALTH AUTHORITY,

        Defendant.
_____/

## **OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

The plaintiff, Rebecca Schirrick, filed a three-count complaint alleging that the defendant constructively terminated her employment in violation of her federal rights and state law. The parties stipulated to transfer of the case to the Northern Division of the Eastern District of Michigan approximately a year ago, and on February 28, 2005 Judge Victoria A. Roberts ordered the case transferred. In lieu of filing an answer, the defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and (b)(6), arguing that the Court does not have jurisdiction over the complaint and the Michigan Whistleblower Protection Act provides the plaintiff her exclusive remedy. The plaintiff filed a response disputing the arguments, to which the defendant replied. The Court heard oral argument on the motion on May 25, 2005 and now finds that it has jurisdiction over the matter because Count III of the complaint arises under federal law, the Court may exercise supplemental jurisdiction over Counts I and II, and the plaintiff has failed to state a claim for which relief can be granted in Count III. Therefore, the Court will dismiss the federal claim with prejudice and the state law claims without prejudice.

I.

Plaintiff Rebecca Schirrick was hired by the defendant, Ausable Valley Community Mental Health Authority, as a residential services worker in January 1997. The plaintiff worked for about thirty hours per week at the Au Sable House in Tawas City, Michigan. The defendant is a community mental health authority established under Michigan law. *See* Mich. Comp. Laws § 330.1200(a) *et seq*. The plaintiff alleges that she filed numerous complaints on behalf of mentally disabled individuals against the defendant or its employees during the course of her employment. She allegedly reported to the Michigan Department of Community Health, Office of Recipient Rights that the defendant had a defective recipient rights policy and an incompetent rights officer, and it deprived recipients of their constitutional and statutory rights. The Michigan department investigated the defendant's recipient rights system, found it deficient, and put it on provisional certification. Subsequently, in a review dated August 15, 2003, the department recommended that the defendant be decertified.

The defendant closed Au Sable House on July 2, 2004. The defendant offered Schirrick a position in another house located in West Branch, Michigan. She alleges that the position offered amounted to a constructive discharge because it is located over an hour from her home, constituted a demotion, and required her presence at the home for fifty-six hours per week although the defendant would only compensate her for forty hours per week of work.

The plaintiff filed a three-count complaint on September 24, 2004 in the Southern Division of this district alleging that her constructive discharge: (1) violated her rights under the Michigan Whistleblower's Protection Act, Mich. Comp. Laws § 15.360; (2) violated public policy under the common law; (3) deprived her of substantive due process pursuant to 42 U.S.C. § 1983. The

plaintiff identified the source of the public policy relevant to Counts II and III in the following statutes: the Mental Health Systems Act, 42 U.S.C. § 9501 *et seq*., the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. §15009, the Restatement of the Bill of Rights, 42 U.S.C. §10841, the Michigan's Rights of Recipients of Mental Health Services Act, Mich. Comp. Laws § 330.1700 *et seq*., and the statutory protections for advocacy systems for mentally ill individuals, 42 U.S.C. §§ 10803, 10805.

II.

The defendant first argues that the Court does not have subject matter jurisdiction over the case and the matter must be dismissed according to Federal Rule of Civil Procedure 12(b)(1). Lack of subject matter jurisdiction may be asserted at any time, either in a pleading or a motion. Fed. R. Civ. P. 12(b)(1); *Television Reception Corp. v. Dunbar*, 426 F.2d 174, 177 (6th Cir. 1970). When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion. *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n.*, *Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *see also Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).

The parties in this case are nondiverse, so the Court may exercise jurisdiction over the dispute only if at least one of the plaintiff's claims "arise[s] under the Constitution, treaties or laws of the United States." 28 U.S.C. § 1331. Count II of the complaint is a state law claim for wrongful termination in violation of public policy. Although federal law is cited as the source of the public policy, raising the possibility of a substantial federal question, the Sixth Circuit dealt with this precise issue in *Long v. Bando Manufacturing of America, Inc.*, 201 F.3d 754 (6th Cir. 2000). In that case, the plaintiff filed a state court action for wrongful employment termination in violation

of public policy, and the source of the policy allegedly violated had its foundation in both federal and state law, as in this case. The court held that the complaint did not present a substantial federal question, and therefore "did not invoke the federal courts' 'arising under' jurisdiction," on the ground that the complaint "put forth alternate state and federal policies to support [the plaintiff's] state-law wrongful discharge claim." *Id.* at 760-61 (following *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809-10 (1988)). Count II of the complaint in this case, therefore, will not provide a basis for federal jurisdiction.

However, Count III is based on 42 U.S.C. § 1983. That count plainly arises under federal law. "A suit arises under the law that creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). Because section 1983 creates the cause of action in the plaintiff's Count III, the complaint arises under federal law, and the Court may exercise supplemental jurisdiction over the other claims because they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

The defendant argues that the Court does not have subject matter jurisdiction over Count III because the federal statutes cited by the plaintiff do not create a private right that she can enforce. Although that indeed may be the case, it does not diminish the fact that the plaintiff has invoked a federal statute – 42 U.S.C. § 1983 – as giving rise to her cause of action. The defendant's argument goes to the merits of that claim, not the power of the Court to adjudicate it. The potential lack of merit in the complaint does not undermine this Court's subject matter jurisdiction. "[T]he fact that a complaint may not state a claim upon which relief can be granted is of no relevance to the question of subject matter jurisdiction." *Cherokee Express, Inc. v. Cherokee Express, Inc.*, 924 F.2d 603, 609

(6th Cir. 1991) (internal quotes and citation omitted). The issue of the viability of the plaintiff's theory is better left to the motion under Rule 12(b)(6).

### III.

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the allegations in the complaint are taken as true and are viewed favorably to the non-moving party. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995); *Herrada v. City of Detroit*, 275 F.3d 553, 556 (6th Cir. 2001). To survive a motion to dismiss, a complaint must contain "either direct or indirect allegations respecting all material elements to sustain a recovery under *some* viable legal theory." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). The Court may consider only whether the allegations contained in the complaint state a claim for which relief can be granted. *Roth Steel Prod. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). The motion shall be granted only if "no set of facts in support of [the plaintiff's] claim [] would entitle [the plaintiff] to relief." *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994).

To prevail on Count III of the complaint, which the plaintiff has brought under 42 U.S.C. § 1983, she must plead and prove: (1) that the defendant acted "under color of law" and (2) that defendant's conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or the laws of the United States. *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 501, 508 (1990); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). The parties do not dispute the first element. The defendant is a community health authority organized under the auspices of the State. At least for the purpose of the motion, it appears that the defendant concedes its operations are conducted "under color of law."

However, the defendant argues the plaintiff cannot establish the second element because the federal laws upon which she relies do not create a privately enforceable right. Such claims frequently arise in the context of legislation enacted pursuant to Congress' spending authority. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 279-82 (2002). Courts have held that such legislation can give rise to rights enforceable under section 1983. *See Wilder*, 496 U.S. at 508. But the test of the statutory provisions must be reviewed to determine if a particular plaintiff is within the class of persons who may advance such a claim.

In *Wilder*, the Supreme Court held that the Boren Amendment to the Medicaid Act, 42 U.S.C. § 1396a(a)(13)(A), created rights privately enforceable under section 1983 by Medicaid recipients against state agencies. The Court recognized only two exceptions in which statutory rights are not actionable:

> A plaintiff alleging a violation of a federal statute will be permitted to sue under Section 1983 unless (1) "the statute does not create enforceable rights, privileges, or immunities within the meaning of § 1983," or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself."

496 U.S. at 508 (quoting *Wright v. City of Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 423 (1987)). The Court established a three-part test to determine whether the first exception exists, i.e., whether the statute creates private rights. These questions must be answered: (1) Was the provision in question intended to benefit the plaintiff? (2) Does the statutory provision in question create binding obligations on the defendant governmental unit, rather than merely expressing a Congressional preference? (3) Is the interest the plaintiff asserts specific enough to be enforced judicially, rather than being "vague and amorphous"? *Id.* at 509.

The second exception – where Congress forecloses enforcement – is not relevant here.

In *Gonzaga University*, the Supreme Court clarified the standard that previously may have been confused by conflating its cases dealing with the question of whether a statute created an implied private right of action with those cases determining whether private rights enforceable under section 1983 were created. The Court held that "in either case we must first determine whether Congress intended to create a federal right." 536 U.S. at 283. "For a statute to create such private rights, its text must be 'phrased in terms of the persons benefitted.'" *Id.* at 284 (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677, 692, n.13 (1979)). The Court stated that the statute unambiguously must confer "rights," not merely "benefits." *Id.* at 283. Thus, the inquiry "simply require[s] a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Id.* at 285.

The Sixth Circuit applied that test in *Caswell v. City of Detroit Housing Commission*, 418 F.3d 615, 620 (6th Cir. 2005), where the plaintiff claimed the defendant housing commission violated a federal regulation related to section eight vouchers under the Housing Act of 1937 when it prematurely terminated assistance to him because he violated the terms of his lease with his landlord. Although the defendant apparently violated the terms of the applicable regulation, the court found that the statute Caswell cited prescribed only the manner of determining the amount of rent subsidies, not the conditions under which they may be terminated. Citing *Gonzaga University*, the court stated that "in order for Caswell to bring a viable claim under § 1983, he must show that the right, of which he seeks vindication, is conferred by Congress in clear and unambiguous terms. Furthermore, the right conferred must be phrased in terms of the persons benefitted." *Id.* at 619. The court held:

> [The statute] establishes the *amount* of monthly assistance that a tenant should receive *if* he is a participant of the program. Here, Caswell claims that DHC improperly terminated his participation in the Voucher Program altogether, not that

-7-

> DHC violated the monthly assistance amounts set forth in the statute. Therefore, even if [the statute] conferred a right to a fixed amount of subsidies, the right Caswell claims to have been violated – under [the regulation] – has nothing to do with the amount of his subsidy. Moreover, we can find no provision under [the statute] which, in clear and unambiguous terms, confers a particular right upon the tenant to subsidies after the landlord initiates eviction proceedings. For example, [one statutory section] establishes certain obligations of the landlords of participants. However, nothing in this provision confers a right upon the tenant to continued housing subsidies during a court eviction proceeding. Because neither we nor Caswell can point to a specific statutory provision in the Housing Act that confers a right relevant to DHC's alleged violation of [the regulation], Caswell cannot pursue his claim under § 1983.

*Id.* at 620.

The statutes upon which the plaintiff relies as the source of federal rights in this case are the Mental Health Systems Act, 42 U.S.C. § 9501 *et seq.*, the Development Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15009, and a restatement of the bill of rights found at 42 U.S.C. § 10841. These statutes are quite lengthy and need not be set forth here in their entirety. It is sufficient to state that the legislation sets forth a host of rights conferred upon "[a] person admitted to a program or facility for the purpose of receiving mental health services," 42 U.S.C. § 9501(1); 42 U.S.C. § 10841(1), and "[i]ndividuals with developmental disabilities." 42 U.S.C. § 15009(1). The plaintiff singles out a specific provision in legislation requiring States to establish a plan to protect the mentally ill, which states:

> A system established in a State under section 10803 of this title to protect and advocate the rights of individuals with mental illness shall –
> . . .
> (9) establish a grievance procedure for clients or prospective clients of the system to assure that individuals with mental illness have full access to the services of the system and for individuals who have received or are receiving mental health services, family members of such individuals with mental illness, or representatives of such individuals or family members to assure that the eligible system is operating in compliance with the provisions of this subchapter and subchapter III of this chapter.

42 U.S.C. § 10805(a)(9).

The defendant cites cases supporting the proposition that these statutes do not create rights that are enforceable by the recipients of services in State programs developed under this legislation. For instance, in *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1 (1981), the Supreme Court found that the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. §15009, did not create substantive rights enforceable under section 1983. Similarly, in *Croft v. Harder*, 730 F. Supp. 342 (D. Kan 1989), the plaintiff made the argument that the Mental Health Bill of Rights Act, 42 U.S.C. § 9501, and the Developmentally Disabled Assistance and Bill of Rights Act, then codified at 42 U.S.C. § 6009, created federal rights that were enforceable under section 1983. The court granted summary judgment in favor of the defendants. In *Monahan v. Dorchester Counseling Center, Inc*., 770 F. Supp. 43, 47 (D. Mass. 1991), the court stated that "[t]he legislative history of 42 U.S.C. § 10841 also indicates that Congress did not intend to create a private right of action." And in *Brooks v. Johnson and Johnson*, 685 F. Supp. 107, 109 (E.D. Pa. 1988), the court held that the Restatement of Bill of Rights for Mental Health Patients, 42 U.S.C. §10841, did not create a private right of action on its own or under section 1983.

The plaintiff counters by arguing that *Pennhurst* did not interpret the precise statutes cited by the plaintiff in her complaint to demonstrate a violation of a federal right, so its statutory interpretation is inapplicable to the provisions asserted here. *See Society of Good Will to Retarded Children v. Cuomo*, 572 F. Supp. 1300, 1349 (E.D. N.Y. 1983) (interpreting holding that *Pennhurst* did not preclude the possibility of statutory liability). The plaintiff also insists that the statutes asserted here create private rights of action because the defendant receives federal funds to support the developmentally disabled, citing *Nicoletti v. Brown*, 740 F. Supp. 1268 (N.D. Ohio 1987) (holding that the Disabled Assistance Act, 42 U.S.C. § 6000 created a private right of action because the State receiving federal funds must comply with its provisions). The plaintiff also cites *Medley*

*v.Ginsberg*, 492 F. Supp. 1294 (S.D. W.Va. 1980), in which the court held that the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15009, and the Community Mental Health Center Act (CMHCA), 42 U.S.C. § 2689-2689aa, created private causes of action. *See also Gieseking v. Schafer*, 672 F. Supp. 1249 (W.D. Mo. 1987) (finding a section 1983 cause of action for disabled individuals under Developmental Disabilities Act for failure to create an individual habitation plan); *Garrity v. Gallen*, 522 F. Supp. 171 (N.H. 1981) (finding right of action for residents of New Hampshire school for mentally retarded seeking ruling that their right to habilitation required that they be placed in least restrictive alternative under Developmental Disabilities Assistance and Bill of Rights Act); *Naughton v. Bevilacqua*, 458 F. Supp. 610 (D. Kan. 1989) (holding that patients have cause of action under Developmentally Disabled Assistance and Bill of Rights Act).

None of the cases cited by the plaintiff, however, find that these statutes confer an enforceable right upon a care giver, an advocate, or anyone other than "[a] person admitted to a program or facility for the purpose of receiving mental health services," or "[i]ndividuals with developmental disabilities." One will search these statutes in vain for the "clear and unambiguous terms" that confer rights upon someone in the position of the plaintiff. Nor can the statutes be read as signaling an intent by Congress to benefit care givers or patient advocates. *See Wilder*, 496 U.S. at 509. But in order to prevail, the plaintiff must demonstrate that she falls within "a class of beneficiaries" upon which "Congress intended to confer individual rights." *Gonzaga*, 536 U.S. at 285. She has not made that showing. Even if the statutes can be read to confer rights upon the recipients of mental health services, the plaintiff cannot enforce the rights of others in a personal damage action under section 1983. Therefore, the Court concludes that the federal statutes cited by the plaintiff do not create rights enforceable by her under section 1983.

-10-

The plaintiff also alleges in Count III of her complaint that she has been deprived of "substantive due process" as a result of the defendant's "retaliation," consisting of the transfer to a location at a considerable distance from her home requiring a fifty-six-hour workweek. Compl. ¶¶ 32-33. In her brief in opposition to the motion to dismiss, the plaintiff explains that the defendant's actions have deprived her of her "liberty interest to advocate within the recipient rights system established by statute." Pl.'s Resp. Br. at 12-13.

The Sixth Circuit has acknowledged that "[a]n injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination." *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). Such a deprivation occurs, however, only when the employee "has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate [her] employment." *Ibid.* (internal quotes and citations omitted). The *Ludwig* Court set forth five elements that a plaintiff must satisfy, after which she can establish her right to a name-clearing hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . A moral stigma such as immorality or dishonesty is required to show a deprivation of liberty. . . . Third, the stigmatizing statements or charges must be made public. . . . Fourth, the plaintiff must claim that the charges made against him were false. . . . Lastly, the public dissemination must have been voluntary.

*Ibid.* (internal quotes and citations omitted). In this case, the plaintiff has not alleged that the defendant made any stigmatizing statements related to the discharge that implicate her liberty interest. Nor has she pleaded facts from which the other elements might be derived. In fact, the defendant did not actually terminate her; rather the claim is that she was constructively discharged

-11-

by the change in employment location and conditions. Therefore, the plaintiff has not alleged that she was deprived of a constitutional right under the Fourteenth Amendment.

For these reasons, the Court concludes that Count III of the plaintiff's complaint fails to state a claim upon which relief can be granted, and it must be dismissed.

IV.

The Court has subject matter jurisdiction over the state law claims under the supplemental jurisdiction statute because those claim form part of the same controversy as the section 1983 claim. *See* 28 U.S.C. § 1367(a). However, Section 1367 also provides:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over the state law claims rests within the Court's discretion. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). Thus, pursuant to section 1367(c), the Court has the discretion to decline to exercise supplemental jurisdiction over state law claims in this case. *Weeks v. Portage County Executive Offices,* 235 F.3d 275 (6th Cir. 2000) (observing that section 1367(c) "permit[s] the district court to decline to exercise supplemental jurisdiction when that court has dismissed all of the claims over which it has original jurisdiction").

The remaining causes of action are based on theories of wrongful termination in violation of public policy and violation of Michigan's Whistleblower's Protection Act, Mich. Comp. Laws § 15.360. The defendant contends that the common law claim is pre-empted by the Whistleblower's

Protection Act, which is the plantiff's exclusive remedy. These claims and defenses require the application of state law that in some instances is unsettled. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The dismissal of the claim over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Blakely*, 276 F.3d at 863.

The Court believes it is appropriate to decline the exercise of supplemental jurisdiction over the state law claims now that the plaintiff's federal claim will be dismissed. Those claims, therefore, will be dismissed without prejudice.

V.

The Court concludes that it has subject matter jurisdiction over the matter because Count III of the complaint arises under federal law. However, the plaintiff has failed to state a claim for which relief can be granted in Count III, and the Court declines to exercise supplemental jurisdiction over the remaining claims.

Accordingly, it is **ORDERED** the defendant's motion to dismiss [dkt # 4] is **GRANTED**.

It is further **ORDERED** that Count III of the plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

It is further **ORDERED** that the remaining counts based on state law are **DISMISSED WITHOUT PREJUDICE**.

Dated: February 16, 2006                    s/David M. Lawson
                                            DAVID M. LAWSON
                                            United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 16, 2006.

                                    s/Tracy A. Jacobs
                                    TRACY A. JACOBS